UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

NIGEL FREDERICKS, #193708,

          Plaintiff,          Case No.: 11-cv-10810
                                          Honorable David M. Lawson
v.                                      Magistrate Judge David R. Grand

MICHIGAN DEPARTMENT
OF CORRECTIONS,

          Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (Doc. #17) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. #14)

On December 9, 2011, an Order of Reference for General Case Management was entered in this action referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #53). Before the court for a Report and Recommendation are Defendant Michigan Department of Corrections's ("MDOC") Motion to Dismiss (Doc. #17) and *pro se* Plaintiff Nigel Fredericks's Motion for Summary Judgment (Doc. #14). Additionally, Fredericks has filed related motions to amend his complaint and to join a party (Doc. #s 22, 27 and 33), and a Motion to Strike Defendant's Motion to Dismiss (Doc. #56) which the court will address herein.

### I.     BACKGROUND

For purposes of these motions, the court takes as true all well-pleaded factual allegations in the complaint and construes all reasonable inferences from those allegations in Fredericks's favor. *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011). Complaints of *pro se* litigants are construed more liberally than those drafted by attorneys. *West v. Adeco Empl. Agency*, 124 Fed.

Appx. 991, 992 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The following facts are taken from Fredericks's complaint, his affidavit in support of his complaint, and the exhibits attached thereto.

At the time of the events that led to his complaint, Fredericks was incarcerated in the Gus Harrison Correctional Facility in Adrian, Michigan. On December 28, 2007, funds were deposited into Fredericks's prison account, totaling $3,333.33, which were his share of his deceased father's life insurance benefits from the Veteran's Administration under a Servicemembers' Group Life Insurance Policy, the disbursement and control of which is governed by the Servicemembers' Group Life Insurance Act ("SGLIA"), 38 U.S.C. § 1970. (Cplt. ¶¶1, 2).

On the same day the funds were deposited, MDOC withdrew $878.04 from Fredericks's account, labeling the withdrawal "parole loans."[1] (Cplt. ¶3). On January 3, 2008, per the Michigan Attorney General, a hold was placed on Fredericks's prison account, meaning that he could not utilize its balance which at the time was $1,996.96, consisting almost entirely of the remainder of Fredericks's father's death benefits.[2] (Cplt. Exh. at 18-19).[3]

On January 17, 2008, the Michigan State Treasurer petitioned for, and Monroe County

---

[1] Under the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq*., the State of Michigan is entitled to recover from a prisoner up to 90% of his or her assets (with some exceptions) for the cost of continued incarceration.

[2] Other than the parole loans, also withdrawn from Fredericks account during this time was $100 in victim restitution, $334.31 in federal filing fees, $4.67 in medical co-pays, $9.00 in indigent loans, $0.82 in commissary transactions, and $9.76 in postage and copy fees, totaling $458.56. If there had been no previous balance in Fredericks's account, the remaining balance after all of these charges would have been $1,996.73, twenty-three cents less than the amount placed on hold by the Attorney General.

[3] Since the exhibits attached to Fredericks's complaint and affidavit are not delineated as individual exhibits on the docket, nor are they labeled as individual exhibits, the court will cite to the exhibits by the page number of the document as a whole.

2

Circuit Court Judge Michal W. Labeau signed, an Ex Parte Order to Show Cause and Order Appointing a Receiver in a suit that had been brought earlier that month in that court by the State Treasurer against Fredericks, Case No. 08-24557-CZ. (Cplt., Exh. at 9-12). The State Treasurer had sought the return of 90% of the remaining funds in Fredericks's account, alleging that those funds should be appropriated to the State of Michigan for the cost of Fredericks's confinement under the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq*. (*Id.*). On January 18, 2008, after writing to the warden to determine the status of his account, Fredericks learned about the hold placed on his account by the Attorney General and the withdrawal of the $878.04 in parole loans. (Cplt. ¶21; Cplt. Exh. at 33). On January 22, 2008, Fredericks submitted a letter to the Attorney General, stating the following:

> I am writing in regards to a hold that has been placed on my account, per your authority. I would request that I be allowed to forfeit eccess [sic] funds of $1,500 that is in my account. My reason for this request, is that I have legal matters, in which I need access to my account, and any funds that may remain. It is also my wish to resolve this matter in any way that you may see is fit, as it is my desire to free my account of all debts and holds.

(Cplt. Exh. at 35). Fredericks added a postscript to his letter, stating, "I also inclose [sic] an account of current balance, along with statement of debt paid thus far." (*Id.*). On January 28, 2008, the $878.04 that was withdrawn from Fredericks's account was returned per a court order, (Cplt ¶28; Cplt. Exh. at 19), and on June 4, 2008, the State Treasurer voluntarily dismissed its case against Fredericks, acknowledging Fredericks's argument that the death benefits of Fredericks's father were immune from garnishment under the SGLIA. (Cplt ¶ 15; Cplt. Afdvt. Exh. at 19). The hold on Fredericks's account was also released. (Cplt. Exh. at 25).

However, on June 10, 2008, funds totaling $854.46 were debited from Fredericks's account, the balance of which was comprised almost entirely of his unspent death benefit receipts, to pay two more outstanding parole loans. (Cplt. ¶28; Cplt. Exh. at 25). Fredericks

3

then filed suit against MDOC in the Monroe County Circuit Court (Case No. 10-30014-CZ). (Cplt. ¶25). According to a state court order attached to Defendant's motion to dismiss,[4] Fredericks sued to recover $1,282.35[5] that had been debited from his account, alleging that he was denied notice and a hearing, and that those funds were immune from garnishment under the SGLIA. (Def. Mot. Dis. Exh. 1 at 2). The Monroe County Circuit Court denied Fredericks's claim for relief, holding that his January 22, 2008 letter to the Attorney General constituted written permission for the prison to remove up to $1,500 from Fredericks's prison account without a hearing.[6] (*Id.* 2-3). In addition, the court held that the letter constituted a written waiver by Fredericks to any claims under the SGLIA, at least up to the $1,500 he agreed in the letter to forfeit. (*Id.*).

Fredericks alleges that he exhausted his remedies "in the 38th Judicial State Curcuit [sic] Court in 2010 in regards to [] Case No. 10-30014-CZ," (Cplt. ¶25), but he does not allege that he appealed the Circuit Court's decision to the Michigan Court of Appeals. He then filed the instant complaint in federal court under 42 U.S.C. § 1983, alleging that MDOC violated his 5th and 14th Amendment rights to be free from illegal taking without due process, as well as violated the supremacy clause, Article VI, Section 2, in that MDOC took funds from Fredericks's prison

---

[4] A court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-681 (6th Cir. 2011) (internal quotations and citations omitted).

[5] Based on Fredericks's allegations in his instant complaint, and the statements of the state court in its order of dismissal, the $1,282.35 included the two June 10, 2008 parole loan debits at issue here. (Cplt. ¶25; Def. Mot. Dis. Exh. 1 at 2).

[6] MDOC Policy Directive 04.02.105(R) provides that notice and a hearing are required "unless the prisoner waives his/her right to a hearing in writing, and the prisoner and the staff agree on the appropriate disposition of the funds."

4

account without affording him the proper notice and hearing, and that the funds removed from his account were immune from garnishment per the SGLIA. (*See generally* Cplt.).

## II. DEFENDANT'S MOTION TO DISMISS

On May 6, 2011, the MDOC timely and properly[7] filed its motion to dismiss Fredericks's complaint, arguing that it is immune from suit under the Eleventh Amendment to the United States Constitution as an entity of the State of Michigan, that Fredericks's suit is time-barred by the statute of limitations, and that Fredericks's suit is barred by the *Rooker-Feldman* doctrine.

As stated above, when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court takes as true all well-pleaded factual allegations in the complaint and construes all reasonable inferences from those allegations in Fredericks's favor. *Smith*, 657 F.3d at 420. Even though the court must construe a *pro se* plaintiff's complaint liberally, he must still plead facts adequate to state a plausible claim, *see Ashcroft v. Iqbal*, 556 U.S. 662, 884 (2009), and give the defendant fair notice of the claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### A. Statute of Limitations

The court begins with the argument that Fredericks's claims are time-barred by the statute of limitations. In order to determine whether Fredericks's claims are barred, the court must first determine the applicable statute of limitations. The Sixth Circuit has held that "the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the State's three-year limitations period for personal injury claims." *Wolfe v. Perry*, 412 F.3d 707,

---

[7] MDOC's responsive pleading was due May 10, 2011. *See* March 16, 2011 docket entry. Its Motion to Dismiss was the proper vehicle for raising the defenses asserted therein. Fed. R. Civ. P. 12(b). Accordingly, in a separate order which will follow, Fredericks's "Motion to Strike the Defendant's Motion to Dismiss" (Doc. #56) will be denied.

714 (6th Cir. 2005); M.C.L.A § 600.5805(10).  Defendant alleges that since Fredericks's initial injury occurred on December 28, 2007 and he did not file his complaint until February 28, 2011, his claim is time-barred.  The court disagrees.

While the bulk of Fredericks's complaint centers on the first time the parole loans were withdrawn, which according to the complaint Fredericks did not discover until January 18, 2008, he also alleges injury from the second withdrawal of funds on June 10, 2008.  Since those funds are the only ones that remain outstanding (the first withdrawn funds having been re-deposited into Fredericks's account), reading Fredericks's complaint in the light most favorable to him, the court finds that the predominant injury for which he seeks relief is the removal of the funds the second time without notice and a hearing.  That occurred within the statute of limitations period and thus Fredericks's complaint should not be dismissed on that ground.

B.     Rooker-Feldman

Defendant argues that Fredericks's complaint is barred by the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).  *Rooker-Feldman* precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine only applies where a plaintiff complains of being injured by the challenged state court decision itself, for example, where a plaintiff "asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law."  *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006).  The doctrine is not implicated "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Briscoe v. Jackson*, 285 Fed.

Appx. 205, 207 (6th Cir. 2008) (quoting *Exxon Mobile*, 544 U.S. at 293). When a "federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction." *Id.* (quoting *Exxon*, 544 U.S. at 293).

In order to determine whether Fredericks's claims are barred by the *Rooker-Feldman* doctrine, the court must first look to "the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision itself, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim" over which the district court may have jurisdiction. *McCormick*, 451 F.3d at 393; *see also Washington v. Wilmore,* 407 F.3d 274, 280 (4th Cir. 2005) (holding that *Rooker-Feldman* does not apply because "[plaintiff's] claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights [by the defendant]").

It is clear from Fredericks's complaint and his motions to amend and to join a party that the source of his alleged injury is not the state court decision itself, but the alleged actions of MDOC in withdrawing money from his account without proper notice and a hearing and in violation of the provisions of the SGLIA. Defendant argues that because Fredericks alleged the same violations in the prior state court action and that court ruled against him, he satisfied the *Rooker-Feldman* requirement of being a "state-court loser" seeking review of a state court judgment. But simply because Fredericks is a state-court loser and filed his federal case after the conclusion of the state case is not sufficient to trigger *Rooker-Feldman*. Fredericks also must be specifically seeking review of the state court decision, which he is not. "[A] complaint in which the plaintiff contends he was injured by the defendant[], rather than by the state court decision

7

itself, is not barred by *Rooker-Feldman*, even if relief is predicated on denying the legal conclusion reached by the state court." *Brown v. First Nationwide Mortgage Corp.*, 206 Fed. Appx. 436, 439 (6th Cir. 2006). Hence, while a determination by this court on the merits might result in a different outcome than the one reached by the state court, this is irrelevant to whether *Rooker-Feldman* applies:

> Appellate review - the type of judicial action barred by *Rooker-Feldman* - consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.

*Coles v. Granville*, 448 F.3d 853, 858-859 (6th Cir. 2006) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)). Because Fredericks "does not complain of an injury caused by a state court judgment, he is asserting independent claims which are not barred by Rooker-Feldman," *Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 Fed. Appx. 285, 288 (6th Cir. 2007), and his complaint should not be dismissed on this ground.

### C.     Eleventh Amendment Immunity

However, Fredericks's complaint as drafted cannot withstand Defendant's argument of immunity. Fredericks's complaint as currently drafted names MDOC as the sole defendant. It is well established that the Eleventh Amendment bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986). The State of Michigan has not done so

here. *See McCoy v. Michigan*, 369 Fed. Appx. 646, 654 (6th Cir. 2010). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC, as an agency of the state of Michigan, is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy*, 369 Fed. Appx. at 653-54; *Turnboe v. Stegall*, No. 00-1182, 2000 U.S. App. LEXIS 27967 at *6, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Peoples v. MDOC*, No. 99-1658, 2000 U.S. App. LEXIS 4971 at *3 (March 21, 2000).

Contrary to Fredericks's assertion, the fact that MDOC has appeared in this case and filed motions and responses does not abrogate its Eleventh Amendment immunity. "[A] waiver of eleventh amendment immunity will be found only where indicated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" *Allinder v. Ohio*, 808 F.2d 1180, 1184 (6th Cir. 1987) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). A state's or its agency's appearance and offer of defenses on the merits are no bar; the defense of Eleventh Amendment immunity is jurisdictional and may be raised at any stage of the proceedings. *Id.* (citing *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n.18 (1982)). MDOC's filings having raised the defense of Eleventh Amendment immunity, there is no plausible argument that the State has consented to its waiver.

In addition, 42 U.S.C. § 1983 requires that the defendant to a civil rights action be a "person." *Lapides v. Bd. of Regents,* 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, (1989). MDOC is not a person within the meaning of the statute. *Parker v. Mich. Dep't. of Corr.*, 65 Fed. Appx. 922, 923 (6th Cir. 2003). Since Fredericks's complaint seeks relief against an entity from which suit is barred, his complaint should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

### III.     FREDERICKS'S MOTIONS TO AMEND AND TO JOIN A PARTY

Partially in response to Defendant's Motion to Dismiss, Fredericks moves to amend his complaint and to join an additional defendant, prison facility manager D.L. Lance, in his official and individual capacities.[8] *See* Doc. #s 22, 27 and 33.  A party may amend its pleading once as a matter of course within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1).[9]  Otherwise, a party may amend only with the opposing party's written consent or the court's leave, which should be freely given.  Fed. R. Civ. P. 15(a)(2).  However, a court should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile."  *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993).[10]

Fredericks's motions to amend and to join a party, the earliest of which was dated and

---

[8]     Fredericks's proposed claim against Lance appears merely to be that as the prison's facility manager, he "allowed" the MDOC's challenged conduct to occur.  *See* Doc. #33, Motion to Amend at 2.

[9]     Fed. R. Civ. P. 71.1(f) (raised in Fredericks's motion to amend, Doc. #22) is applicable only in "proceedings to condemn real and personal property by eminent domain…"

[10]    Fredericks seeks to join proposed defendant Lance under Fed. R. Civ. P. 19 and 20.  The court declines to assess whether joinder is proper under either rule, however, because it has determined that Fredericks's action is barred by the doctrine of preclusion, thus any joinder would be futile.  *See Shultz v. Berrios*, No. 10-10486, 2011 U.S. Dist. LEXIS 17456 at *5 (E.D. Mich. Feb. 23, 2011) (where motion to join parties is essentially a motion to amend, magistrate judge did not err in determining amendment was futile under Rule 15).

filed more than 21 days after Defendant filed its motion to dismiss will be denied because, even as proposed, his complaint could not withstand a motion to dismiss as his proposed claims against Lance are barred under the doctrine of preclusion. Preclusion, often known as *res judicata*, is an affirmative defense that generally must be raised by the defendant or it is waived. Fed. R. Civ. P. 8(c). While courts usually may not raise affirmative defenses *sua sponte*, the Sixth Circuit, citing the Supreme Court, has recognized "that it might be appropriate to raise the *res judicata* defense *sua sponte* in certain circumstances," to avoid "unnecessary judicial waste." *Hutcherson v. Lauderdale County*, 326 F.3d 747,757 (6th Cir. 2003) (citing *Arizona v. California*, 530 U.S. 392, 412 (2000)); *see also Hanger Prosthetics & Orthotics East, Inc. v. Henson*, 299 Fed. Appx. 547, 553-54 (6th Cir. 2008) (collecting cases).

Here, the court finds such circumstances exist. The object of determining whether an amendment would be futile is specifically aimed at preventing the waste of judicial resources. Were the court not to raise the defense of preclusion *sua sponte*, Fredericks would be required to file an amended complaint naming a new defendant, who would then have to be served and obtain counsel, file an appearance and file a motion to dismiss, to which Fredericks would have to respond, all of which would waste the time and money of the individuals and of this court, since the court finds that Fredericks's claims are barred by preclusion. Raising the issue *sua sponte* also "insures the finality of decisions . . . and protects litigants from multiple lawsuits." *Hanger*, 299 Fed. Appx. at 554. Thus raising preclusion *sua sponte* is appropriate under these circumstances. *See e.g. Id.* (holding that second litigation would waste resources, risk conflicting judicial determinations and burden parties with multiple lawsuits); *Tatar v. Wachovia Bank*, No. 11-12090, 2011 U.S. Dist. LEXIS 84277 at *4-5, 2011 WL 3298965 (E.D. Mich. July 29, 2011) (finding that special circumstances existed when plaintiff, proceeding *pro se*, did not have filing

fee incentive to consider merits of claim before filing).

Preclusion refers to the general principle that federal courts must give the same preclusive effect to a state-court judgment as that judgment would receive in the rendering state. 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). Michigan recognizes two forms of preclusion: claim preclusion, or true *res judicata*, and issue preclusion, or collateral estoppel. *Abbot*, 474 F.3d at 330. Even without having the benefit of the entire state court record, it is clear that Fredericks's claims are precluded by the either doctrine.

### A. Claim Preclusion

Michigan law recognizes claim preclusion where "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved on the first." *Adair v. State*, 470 Mich. 105, 121 (2004). All three requirements are met here. The first condition is satisfied as the state court decision granting summary disposition to MDOC was a final judgment on the merits. (*See* Def. Mot. to Dismiss, Exh. 1); MCR 2.504(B)(3) ("Unless the court otherwise specifies in its order for dismissal, a dismissal under this subrule or a dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for failure to join a party under MCR 2.205, operates as an adjudication on the merits."); *Washington v. Sinai Hosp. of Greater Detroit*, 478 Mich. 412, 419 (2007).

Second, MDOC and proposed defendant Lance, as an employee of MDOC, are in privity with one another, even though Lance was not a party to the state court action. Privity is easily determined when an individual employee of a government entity is sued in his official capacity, which is what Fredericks proposes to do in his first two motions to amend his complaint and join a party. (Docs. #22 at 1, #27 at 4); *Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998)

12

(citing Moore's Federal Practice 3d, § 131.40[3][e][ii] ("[A] prior judgment involving the government will bar an action against individual officials of the government in their official capacity for the same claim."). A more nuanced question is whether an employee sued in his individual capacity, as Fredericks proposes to in his third motion to join a party, (Doc. #33 at 2), remains in privity with the government entity, since, "if the plaintiff prevails against the official, the official must satisfy the judgment out of his own pocket." *Fleming v. City of Detroit*, No. 09-13075, 2006 WL 2559862 at *6, 2006 U.S. Dist. LEXIS 62528 (E.D. Mich. Sept. 1, 2006) (citing *Connor v. Reinhard*, 847 F.2d 384, 394 (8th Cir. 1989).

The Sixth Circuit has held that for privity to exist under Michigan law, "'a perfect identity of the parties is not required'; rather, the Michigan courts require 'a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in litigation." *McCoy*, 369 Fed. Appx. at 650 (quoting *Adair*, 470 Mich. at 122). In *McCoy*, the Sixth Circuit went on to hold that: "This test is met when the previous governmental-unit Defendant (here, the MDOC) and the present-case Defendants (here, the individual named Defendants) have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claim in the second." *Id.* Since Lance was an employee of the MDOC during the time in question, privity exists between them even if Lance were sued in his individual capacity.[11]

The only outstanding question is whether any matter in this case, including Fredericks's claims of violations of his federal constitutional and statutory rights, could have been resolved in

---

[11] Even if Lance were determined not to be in privity with MDOC, this element would still be satisfied as the Sixth Circuit, citing the Michigan Supreme Court, has held that privity is not required when the doctrine of preclusion is raised defensively as it would be here. *McCoy*, 369 Fed. Appx. at 650 (citing *Monat v. State Farm Insurance Co.*, 469 Mich. 679 (2004)).

13

the first case. The court finds that they could. To determine whether a matter could have been resolved in the first case, "Michigan applies two alternative tests: the 'same evidence' test and the 'same transaction' test." *Rehab Mgmt. Solutions, LLC v. Diversa Care Therapeutics, Inc.*, No. 11-11990-BC, 2011 U.S. Dist. LEXIS 104156 at*12, 2011 WL 4088300 (E.D. Mich. Sept. 14, 2011) (quoting *Begin v. Mich. Bell Tel. Co.*, 284 Mich. App. 581, 600 (2009)). The "same evidence" test asks "whether the same facts or evidence are essential to the maintenance of the two actions." *Id.* (internal citations omitted). The "same transaction" test "provides that the assertion of different kinds of theories of relief still constitute a single cause of action if a single group of operative facts give rise to the assertion of relief." *Adair*, 470 Mich. at 124. The facts here would satisfy either test as the evidence that would be essential to Fredericks's proposed claims here is the same as that which was essential to his prior action, namely the bank account records, the SGLI policy language, the SGLIA statutory language, the MDOC policy directive, the State Treasurer's case against him, the hold on his account, the withdrawal of the disputed funds, and his January 22, 2008 letter to the Attorney General, all of which occurred or were in force before Fredericks filed his state court action. Any other claims Fredericks may have had against Lance regarding those matters arose out of the same set of facts and thus could have been raised by Fredericks in his state court case. *See O'Leary v. Charter Twp. of Flint*, No. 09-13075, 2010 U.S. Dist. LEXIS 73472 at *26, 2010 WL 2870400 (E.D. Mich. July 21, 2010). Fredericks even admits in his complaint that he has exhausted his state court remedies with regards to this matter. (Cplt. ¶ 25). Accordingly, claim preclusion prevents Fredericks from relitigating his case here.

      **B.**    **Issue Preclusion**

Fredericks's proposed claim against Lance is also barred under the doctrine of issue

preclusion, which "precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Ditmore v Michalik*, 244 Mich. App. 569, 577 (2001). "Under Michigan law, issue preclusion applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 154-55 (1990), cert. denied, 497 U.S. 1004 (1990)).

All four factors are satisfied here. The first two factors are satisfied because, as stated above, the prior state-court decision at issue was decided on the merits and involved the same parties, or ones in privity to them. The issues of the legality of the MDOC's conduct and the import of Fredericks's January 22, 2008 letter to the Attorney General, which would be essential to determining whether Fredericks is entitled to relief against Lance, were actually litigated in the state court proceeding. (*See* Def. Mot. to Dismiss, Exh. 1). Finally, Fredericks had a full and fair opportunity to litigate those issues, as the state court decided the case on Fredericks's own motion for summary disposition. *Abbott*, 474 F.3d at 331 (citing several Supreme Court cases for the proposition that a full and fair opportunity generally requires notice and opportunity to respond).

Because Fredericks's underlying claim is barred under both the doctrines of claim preclusion and issue preclusion, Fredericks's proposed amendment to add Lance as a defendant would be futile. Accordingly, in a separate order which will follow, his motions to amend his

15

complaint and to join a party will be denied.[12]

## IV. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion to Dismiss (Doc. #17) be GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion for Summary Judgment (Doc. #14) be DENIED.

Dated: January 9, 2012
s/ David R. Grand
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

---

[12] For all of the reasons discussed above, Fredericks cannot show that he is entitled to judgment as a matter of law, and accordingly the court recommends that his Motion for Summary Judgment (Doc. #14) be denied. Fed. R. Civ. P. 56(a).

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 9, 2012.

                                          s/Felicia M. Moses
                                          FELICIA M. MOSES
                                          Case Manager